UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-384-GWU

TERRY ROSE,                                                          PLAINTIFF,

VS.                        **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                     DEFENDANT.

**INTRODUCTION**

The plaintiff brought this action to obtain judicial review of an administrative

denial of his applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI).  The appeal is currently before the Court on cross-motions

for summary judgment.

**APPLICABLE LAW**

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.  Is the claimant currently engaged in substantial gainful activity?
    If yes, the claimant is not disabled.  If no, proceed to Step 2.
    See 20 C.F.R. 404.1520(b), 416.920(b).

2.  Does the claimant have any medically determinable physical
    or mental impairment(s)?  If yes, proceed to Step 3.  If no, the
    claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.  Does the claimant have any severe impairment(s)--i.e., any
    impairment(s) significantly limiting the claimant's physical or
    mental ability to do basic work activities?  If yes, proceed to

1

06-384 Rose

Step 4.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months?  If yes, proceed to Step 5.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.  <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.   20 C.F.R. Section 404.1529 (1991).   However, in evaluating a claimant's allegations of disabling pain:

06-384 Rose

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. <u>Id</u>. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. <u>E.g., Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).   Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley  v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Terry Rose, was found by an administrative law judge (ALJ) to have "severe" impairments consisting of a seizure disorder, an anxiety disorder, rule out borderline intellectual functioning, and a history of alcohol abuse in reported remission.  (Tr. 21).  Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Rose retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 23-6).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were limited to "medium" level exertion, could not work around unprotected heights or hazards and had to take the normal seizure precautions, and was limited to routine, repetitive, object-oriented tasks in a low stress work environment.  (Tr. 292).  The VE

responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Id.).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mr. Rose alleged disability due to seizure problems, which had caused him to stop working, despite taking Dilantin and Klonopin. (Tr. 274-5). He admitted to formerly having an alcohol problem, but stated at the March, 2006 administrative hearing that he had stopped drinking five years earlier. (Tr. 277). He was also seeing a psychologist at the local Comprehensive Care Center (CCC), Dr. Walker, for anxiety, and was taking an unknown pill for anxiety, although he had not been able to afford transportation to CCC for the past two or three months. (Tr. 280).

There is no question that the psychologist, Dr. Gerald Walker, issued a medical source statement on May 25, 2005 which indicated that the plaintiff would have no useful ability to carry out detailed instructions or respond appropriately to changes in the work setting, and would also have "seriously limited but not precluded" restrictions in other areas such as his ability to interact appropriately with the public, coworkers, supervisors, and to changes in a routine work setting. (Tr. 215-16). When the VE was presented with a hypothetical question including these

06-384 Rose

limitations, she responded that it would be difficult for the plaintiff to maintain any job.  (Tr. 293-4).

The plaintiff maintains on appeal that it was error for the ALJ to reject this opinion from a treating source.  The ALJ stated, however, that Dr. Walker's limitations were not supported by his treatment notes, which included a Global Assessment of Functioning (GAF) score of 60.  (Tr. 22, 248).  A GAF score of 60 reflects only "moderate" symptoms.   Diagnostic and Statistical Manual of Mental Disorders (4th Ed.), p. 34.  It is also noteworthy that Dr. Walker's assessment appears to have been completed on the date of the plaintiff's first visit to the CCC. (Tr. 254-5).  Part of the rationale for giving great weight to the opinions of treating sources is that they have had the opportunity to observe the claimant over an extended period of time.  Therefore, in view of the apparent inconsistencies between the functional restrictions and the GAF score, as well as the lack of a treating relationship at the time the assessment form was completed, the ALJ could reasonably have discounted Dr. Walker's limitations.  The plaintiff's treating family physician, Dr. David Hays, also diagnosed "chronic anxiety," but indicated that it was "moderate."  (Tr. 218).  A consultative psychological examiner, Dr. Harwell F. Smith, had evaluated the plaintiff on August 7, 2004, and concluded that, while Mr. Rose had diagnoses of alcohol dependence in partial remission, an anxiety disorder, "rule out" a verbal learning disability and "rule out" borderline intellectual functioning, he

06-384 Rose

should still have a "fair" ability to interact socially and tolerate stress, show sustained concentration and persistence, interact socially with people at work, and adapt or respond to pressures of a day-to-day work setting. (Tr. 158-9). Dr. Smith's GAF score was given as 65 (Tr. 158), which is fairly consistent with the GAF of Dr. Walker a year later. State agency psychologists who reviewed the record shortly after Dr. Smith's report was submitted concluded that the plaintiff did not even have a "severe" impairment. (Tr. 179, 194). The hypothetical question is reasonably consistent with limitations suggested by Dr. Smith. For all of these reasons, the mental hypothetical factors are supported by substantial evidence.

Regarding the plaintiff's seizure disorder, Dr. Hays indicated that it was "severe." (Tr. 218). Although he declined to fill out a specific functional capacity evaluation form, Dr. Hays offered the opinion that Mr. Rose was unable to work because of his seizure disorder and his anxiety. (Tr. 220). While Dr. Hays submitted office notes indicating that he had treated Mr. Rose for complaints of seizure since approximately 2002 (Tr. 211-213), Dr. Hays and a colleague initially believed that the seizure disorder was probably connected with the plaintiff coming off alcohol. (Tr. 212-13). Between August, 2002 and April, 2003, there is only one mention of a seizure disorder in the office notes, and at that time, it was noted that the plaintiff was "having some mild seizure-like activity but states this is doing well for him." (Tr. 211-213). In 2003 and 2004, the notes reflect primarily prescriptions

06-384 Rose

for Klonopin for anxiety.  (Tr. 209-210).  After prescribing a refill for Dilantin and Klonopin in May, 2005, Dr. Hays' notes indicate that he had asked a church to pay for his seizure medication but "patient only picked up Klonopin and left the Dilantin at the pharmacy."  (Tr. 221).  This suggests that even when the plaintiff had seizure medication available, he was not taking it as prescribed.  The ALJ could reasonably have followed the restrictions given by a consultative physical examiner, Dr. Kevin Moreman, who found no real abnormalities upon physical examination but suggested that Mr. Rose should avoid heights, moving machinery, temperature extremes, and chemicals.  (Tr. 160-3).  A state agency reviewing physician, although not having access to the entire record, also limited the plaintiff to never climbing ladders, ropes, or scaffolds and avoiding even moderate exposure to hazards.  (Tr. 166-72).  The limitations in the hypothetical question gave the plaintiff the benefit of the doubt regarding his seizure disorder.

The decision will be affirmed.

This the 23rd day of May, 2007.



**Signed By:**

**G. Wix Unthank**

**United States Senior Judge**

11